## JOLLEY *et al.* v. HARDEMAN *et al.*

1. The words "liable to deteriorate from keeping," employed in the Civil Code, § 5463, for the purpose of designating a class of personal property which may, under its provisions, be brought to speedy sale, do not apply to articles which because of their enduring nature are unlikely, merely by reason of the lapse of a brief space of time, to undergo changes in form or otherwise causing depreciation in value, but to articles which are for such a reason subject to such changes. An ordinary cotton-press does not fall within the class described by the words above quoted.

2. It is not lawful to levy an execution against an individual upon property belonging to a partnership of which he is a member.

3. The mere tendering to a levying officer of the affidavits requisite to the interposition of a claim in forma pauperis does not, if he refuses to accept the same and return them to the proper court, make a "claim case" between the plaintiff in fi. fa. and the affiant.

4. Since neither the levying officer nor the purchaser at a sale conducted by the former are parties to a claim case, the pendency of such a case does not, relatively to an action by the claimant against them for the recovery of the property sold, constitute lis pendens.

Argued July 24,—Decided August 8, 1900.

Equitable petition. Before Judge Gober. Cobb superior court. November term, 1899.

*H. B. Moss* and *J. O. Gartrell*, for plaintiffs.
*J. Z. Foster*, for defendants.

LUMPKIN, P. J. This was an action by J. J. Jolley and T. J. Jolley against James W. Hardeman and C. N. Barrett. The material portions of the plaintiffs' petition were as follows: They were and had for many years been partners, and, as such, were the owners of a described cotton-press. Hardeman, the plaintiff in an execution which had been issued upon a judgment in his favor against J. J. Jolley, caused the same to be levied upon this cotton-press by Barrett, a constable of the 898th district, G. M., of Cobb county. After so doing, Hardeman presented to the justice of the peace of that district a petition stating that such levy had been made; that the property was likely to deteriorate in value; and that the defendant in execution, being beyond the limits of this State, could not be served with notice of said petition. This petition concluded with a prayer for an order directing the property to be sold before the court-house door of said district after the same had been advertised for ten days. Thereupon the magistrate granted an order of sale as prayed for, it being in the order recited that the defendant in execution could not be served with notice. Subsequently the constable did sell the cotton-press, and Hardeman became the purchaser at the price of $5, although the real value of the property was $150. The latter then took possession of the cotton-press and refused to deliver it to petitioners upon their making a demand for the same. Before the sale

took place, they tendered to the constable a claim affidavit in which it it was distinctly alleged that the property levied on as that of J. J. Jolley was not his individual property, but the partnership property of the firm of J. J. & T. J. Jolley. The claim affidavit was accompanied by a proper affidavit of inability from poverty to give bond, etc. The constable disregarded this claim and failed and refused to return the same to the court from which the execution issued. The petition distinctly alleged that the order of sale "was illegal and void, said press in contemplation of law not being such personal property of a perishable nature or liable to deterioration from keeping or of expense attending the keeping as is specified and intended by the statute in such cases made and provided." Petitioners prayed that the sale be set aside and that they recover possession of the property with hire. To this petition the defendants demurred on the following grounds: "(1) It sets forth no legal cause of action against the defendants or either of them. (2) Said petition shows that before and at the time of the filing of the same there was pending in the justice court of the 897th district G. M., Cobb county, Georgia, a suit by said plaintiffs against said Hardeman for the recovery of said property sued for in this case, the same being a claim case in which said Hardeman was plaintiff in fi. fa., said J. J. Jolley defendant in fi. fa., and said plaintiffs, J. J. Jolley and T. J. Jolley, as a firm and partners and joint owners, claimants, and being the same cause of action and between the same parties as this suit." The demurrer was sustained, and the plaintiffs excepted.

1. The first question presented is whether or not so much of the Civil Code, § 5463, as provides for a speedy sale of property "liable to deteriorate from keeping" is applicable to such an article as an ordinary cotton-press. We are of the opinion that it is not, and so hold as matter of law. The section in question deals with three classes of personal property, viz.: (1) that which is "of a perishable nature"; (2) such as is "liable to deteriorate from keeping," and (3) property the keeping of which is attended with expense. Articles of a perishable nature are those which, because of their inherent qualities, rapidly decompose or decay, and in so doing undergo material changes of form and quality which render them unsuitable for

use and of little or no value. Such things as fruit, fresh fish, and the like, may properly be termed articles of a "perishable nature" within the meaning of the above-cited section. The class of articles evidently intended to be covered by the words, "liable to deteriorate from keeping," is of a somewhat different nature. The words just quoted doubtless refer to things which, while not so readily destructible by the mere lapse of time as articles strictly perishable in their nature, are nevertheless liable to become less useful, and consequently less valuable, much sooner than articles of an enduring character whose composition and characteristics would be but little affected even by the lapse of a considerable period of time. The General Assembly must, we think, have had in mind articles which would preserve their existence and form longer than those of a perishable nature, but which would in a short space of time undergo changes affecting their utility and value. Such, for instance, are articles of food manufactured for immediate use, which, though not perishable, to a greater or less extent lose with their freshness the chief features which render them desirable and valuable. Clearly, the class of articles to which we now refer is of a decidedly different nature from those which remain practically the same in form and substance through periods of weeks, months, or even years, and which therefore could not be expected merely by reason of being kept, to "deteriorate" and, consequently, to become depreciated in value between the time of a levy and a sale had thereunder after advertising in accordance with the general statutory provisions on the subject. It would scarcely be pretended that a wagon or a sewing-machine would appreciably deteriorate from keeping during such a space of time. We of course use the word "keeping" as synonymous with properly keeping, for it can not have been employed by the legislature in any other sense. We are not now concerned with the question as to what property falls within the third class dealt with in the code section above referred to, viz., that the keeping of which is attended with expense; for there is no contention in the present case that the property sold belonged to that class. We discussed the meaning of the word "perishable" only for the purpose of distinguishing property of which it is descriptive from that intended to be designated

by the words, "liable to deteriorate from keeping." We are quite confident that the General Assembly never remotely contemplated that a cotton-press should be classed as an article which would "deteriorate" if kept by a levying officer until a sale thereof could be made under a levy after due advertisement in terms of the law. On the contrary, we think that, without doubt, it belongs to that class of personal property which possesses elements of permanency and stability, and as to which there is no necessity for a speedy sale. Of course, all things change with time; but when, as to a particular thing, the changes are so slow and gradual that a few weeks will leave upon it no perceptible impress for the worse, it must be treated as belonging to the class last indicated.

It was insisted on the argument here that the sale under the order of the magistrate should be treated as binding upon the plaintiffs, because, as owners of the property, they were concluded by the judgment ordering the sale. This position is not maintainable. While an order of sale may be granted ex parte, it is nevertheless open to collateral attack when it is void upon its face. If the owner of property ordered to be sold is served and accorded a hearing, doubtless he can not go behind a judgment whereby it is adjudicated that such property is liable to deteriorate from keeping; but this certainly can not be so as to one who has not had his day in court.

2. The next question for our consideration is: were the plaintiffs, even though the order of sale granted by the magistrate was void, entitled to recover the property? They were not, if the levy made by the constable was valid; for, if so, he would be entitled, by virtue thereof, to hold possession of the property even as against the true owners of the same. But, under the allegations of the plaintiffs' petition, the levy was not valid. The execution being against J. J. Jolley, it afforded the officer no authority to seize property belonging to the partnership of J. J. & T. J. Jolley. This matter is settled by the Civil Code, § 2661, which declares: "The interest of a partner in the partnership assets may be reached by a judgment creditor by process of garnishment served on the firm, and shall not be subject to levy and sale."

3, 4. To the point made by the special demurrer there are
48

two answers. First, the mere tendering of the claim affidavit and affidavit in forma pauperis to the constable did not make a case even between the plaintiff in execution and the claimant. While it is quite true that the interposition of a claim is the beginning of litigation between a plaintiff in execution and a claimant, if the claim affidavit is accepted and returned to the proper court, it certainly can not be said that where the officer rejects the claim affidavit and refuses to return it, any litigation whatever is pending between these parties. Second, even if there were a pending case between the plaintiff in execution and the claimant, it would not, relatively to an action brought by the latter against the constable and a purchaser at his sale, be lis pendens. This is obviously so because neither the officer nor the purchaser would in any sense be parties to the claim case. *Judgment reversed. All the Justices concurring.*